Good morning, Your Honor. It's Ina Lipkin on behalf of Mr. Singh. The matter is before the court following affirmance of the immigration judge's decision by the Board of Appeals. The issues before the court are the petitioner's credibility and possibility or feasibility of internal relocation. Petitioner contends that the several bases for the adverse credibility finding are without substantial evidence. First, the immigration judge heavily relied on improper speculation, conjecture, and negative inferences to discredit the petitioner's testimony and his supporting documents such as the affidavit from his brother, other affidavits, and a medical explanation as to the providence of the medical letter and the inability of the witnesses to appear in court for cross-examination as they all reside in India. There was also an issue of an alleged omission before the asylum office and the petitioner had plausibly testified that he did in his knowledge inform the asylum officer that he was physically harmed by the police and briefly detained, although that didn't appear in the asylum officer's credible theory notes. However, the petitioner consistently testified to that and it was included in his written declaration. Counsel, is it your argument that the immigration judge was required to accept the explanations of the petitioner regarding the provenance of the passport document and the doctor's letter? In light of his other credible testimony, yes, and that is because he provided a very clear explanation of the medical letter. At the record, page 157, he stated the father's obtained the medical records for the family's paperwork and that is plausible given that the petitioner's older brother suffered harm by congress party members, so it is very feasible that the family was keeping records of the harm their children suffered, perhaps to file an additional report before the police or just for their own safekeeping. There's nothing inherently implausible about the date on the medical letter. As far as the passport, we argue in the opening brief and quote to the pages in the record, which really show that the immigration judge inserted the argument in the questioning of the petitioner by stating, didn't you say you obtained the passport before you had harm? And immediately thereafter, the petitioner responded, refuting that, explaining he used the passport to leave India, but he did not obtain it because he had harm. Can we go back to the medical record? I thought the record reflected that the petitioner he needed the medical letter, if in the future he needed the medicine again, but the letter did not contain any mention of any medication. Well, the petitioner testified that his father obtained the letter, so we don't know what the father specifically requested the doctor to indicate in the letter, even if the petitioner thing said that he needed the letter for his records, if in the future he needed the medicine again. That was his explanation for why he got he asked his father to get the letter. But the letter didn't didn't mention any medication. Why isn't that a plausible basis for the IJ to discredit his testimony on that front? Because at page 158, he also clearly stated that they wanted the letter for their records and gave an example when his mother passed away, they obtained identification documents for her and in the same vein, they wish to collect his documentation. The two explanations don't necessarily negate one another. But the IJ isn't compelled to make that same conclusion, is he? He could conclude that those are contradictions. But there is no contradiction with all due respect if he said that there were multiple reasons to obtain a record, one to keep health records like they did for his deceased mother. And on the other hand, should he need medication again, there would be a record of the kind he had previously. So there's not an inherent contradiction. If one of the reasons is contradictory, is that a sufficient basis for the IJ to discredit the testimony? I think that if there are multiple bases of contradiction or inconsistency, the IJ has in its purview the ability to make that finding. But we're here, all the bases of alleged inconsistencies fall out, then no, the judge cannot realize. But doesn't our case law say that if there is one inconsistency, that's enough for the IJ to rest an adverse credibility determination on, even one inconsistency? That could be true, but if there is a plausible explanation as here for the alleged inconsistency, then the IJ should not rely on them. Can I ask a quick question? It's Judge Pregerson. And I didn't want to interrupt Judge Rawlinson, though. Oh, no, I'm done. Okay. So my understanding, and I may be incorrect, is that the class of various medications are listed on the letter. They describe antibiotics, maybe analgesics, other things. So the letter provides, I thought, the nature of the medicine that was provided. So therefore, I thought the dispute was, well, maybe it needed to be more specific. Well, he said it needed the medicine again, not the medicines. He said if in the future he needed the medicine again. Sure. I was just maybe, I just want to correct my recollection if it's not correct. I thought that the medicines, the nature of the medicines was listed on the letter. Well, I mean, categories were mentioned. Right. I was saying, yeah, sure. I just, I got the impression from counsel that she was conceding that no medicines were listed. No, nothing at all. No, I don't think I touched upon that. I was more, I was arguing more to the reasoning behind why he would want to get a letter. Because the IJ speculated that it was for the sole purpose of filing for asylum, whereas his testimony reflected that it was for the purpose of gathering records for future need, whether it be a record for the family, or whether it be for a record of the medication he was given in case he needs that information. But I thought that the reason for finding that letter lacking in perhaps some credibility is that it didn't say ampicillin, as opposed to just saying antibiotics. And that was, I thought, one of the reasons that added to the argument that the letter was, you know, a pretext. I'm not sure I read it that way. Well, does the letter list the class of documents or not? The class of medicines. Sorry. I don't know who's speaking. No, I'm just, I just want to, Judge Ferguson, did you mean class of medicines or? Yes. I'm sorry. I misspoke. It just, it just listed the medicine as you had analgesics, as what you had stated earlier, Your Honor. Okay, counsel, your time is up, but I'll give you a minute for rebuttal. So let's hear from the government. Thank you, Your Honor. May it please the court, Jenny Lee, on behalf of the court, on behalf of the respondent, the Attorney General of the United States. The court should deny Mr. Singh's petition for review because the record does not compel the conclusion that he was credible. This court should deny his petition because his evidence was not so compelling that no reasonable fact finder could find that he was not credible. That is the standard. The agency gave three specific cogent reasons for why Mr. Singh was not credible. First, he admitted whether he was beaten by the police during his credible fear interview. He had at least three opportunities to tell the asylum officer that he was beaten, yet he didn't. Second reason that the- Wasn't that, aren't we dealing, counsel, aren't we dealing with asking precise questions? And, you know, wasn't he asked, aside from Badal and BJP party members, were you ever beaten by police? And the answer to that question is that the police were members of those parties. Therefore, to answer the question, no, would be truthful. That would be going beyond, I guess, what was said during the credible fear interview. He said he was first attacked by the Badal party workers in November of- Well, let's focus on the word aside. Have you ever been beaten by police? Wasn't that the question? And he never said that he was beaten by the police. Yes, but if he- We have to look at what he was asked, don't we? Yes, and also if we look at what he was asked, they asked him, did you report this incident to the police? And he said, yes, I went to the police, but on the contrary, they detained us overnight and said that if we come back, they were going to kill us. He could have easily inserted in that answer that the police beat him as well, as he did when he was on direct, when he testified on direct. And the second opportunity that he had to tell the asylum officer that he was beaten by the police was when he was asked, are you afraid of anyone else who works for the government of your country, including the police? And then his answer was not the Dahl members or the police, he said besides the Congress party is there. And when the asylum officer asked, have you ever been harmed or threatened by members of the Congress party, who he's just said were part of the police, said no. And then when we recap the summary, the asylum officer gave a summary of what he said about how he was twice beaten by the Dahl party members and about the police, how the police detained him and threatened to file false accusations against him, he did not say that he was beaten by the police. So he had at least three opportunities clearly to say that he was beaten by the police. I don't know when you say three opportunities. I don't know. To me, you have to look at what questions were asked. And without being precise on those issues, I have a difficult time saying that someone wasn't truthful. So go ahead. Well, your honor, we are not to look at just one facet of the credibility determination, but we have to look at the record as a whole. And then when the immigration judge asked him about the omission, he said a few times, well, it should be in there. I said it. So the immigration judge has his testimony saying I said it to the asylum officer and the asylum officer's notes and the immigration judge is not required to accept his explanation. If there is another explanation available, the record just does not compel his reading of the evidence. The second. Can I ask you one question about the format of the credible fear interview notes? Yes, your honor. Are these sort of standard questions that are asked? I believe they are, but I've never been an asylum officer, so I can't say for sure. But based on my reading of other credible fear interviews, it just seems to be. So in other words, when the asylum officer is interviewing an applicant or a non-citizen, they have a series of questions that they want to ask. Yes, your honor, that is correct. It seems to be sort of laid out what they're going to do. And then they ask the questions and then they just note down the answers. Is that kind of what's going on here? Yes, but the asylum officers are not robots. They don't just take the answer and stop. If there are, I guess, follow-up questions, they will ask them. It's pretty clear based on this credible fear interview on the administrative record 434, where he said he went to the police and then the officers asked if they threatened to kill you if you came back. And then he asked another question. Do you think the police officer would have killed you? So it's a procession. It's based on what statements the applicant gives at the time. So it's a flowing document, obviously. May I jump in again if everyone is? Sure.  He said it looked like, let me finish. He said it looked like the letter had been prepared for the asylum case, but the letter was written in December 2015, well before Singh ever left the country or applied for asylum. Yes, and again, if we look at the evidence as a whole. I asked you about that specific question. Not argument, just that question. Based on what Mr. Singh was testifying, the immigration judge said that it looks like it was prepared for the asylum case. So I'm not exactly sure as to your question, Your Honor. How does that make sense in the context of the letter written in December 2015, well before Singh ever left the country or applied for asylum? How does that make sense? Well, the reason why this makes sense is, again, we're not looking at each individual state. So it doesn't make sense, but we need to look at things as a whole. That's what you're saying. That is correct, Your Honor. We have to look at the totality of the circumstances. Right. This analysis doesn't make sense, but we need to look at everything else, right? Yes, Your Honor. We have to look at the totality of the evidence. And if we look at the totality, then this statement does make sense. Because what did he say? He said he was getting his passport to... Well, he said a couple of reasons about the passport is why he got it. He said, we all got one. We were all making passports. And then the threat came later. Then he also testified with regarding why he got the passport, that he got it in preparation for leaving the country because he felt that his life was in danger. And that's at the administrative record 152 to 53. So he gave two very different reasons. And he also testified that... Those are not inconsistent. People can get passports, quote, because everyone's getting them. They can also get passports within a subset of the other reason because there's fear. So I don't see those as being inconsistent. Do you? Well, obviously, Your Honor, we disagree. And when there are two... Well, it's just a question of logic. It's not a question of disagreeing. Well, if we have two inconsistent conclusions from the evidence, then that does not prevent the agency's determination by... But they have to be inconsistent. Well, the agency found this to be an inconsistency. He said, at one point, we all got it. And then another, he said, I got it because I wanted to leave the country because I feared for my life. Those are two different things to say. Counsel, could we go to the testimony on the medical letter, pages 158 and 159 of the record? So the judge asked me why he wanted the letter for his records. He asked him to explain it. And Mr. Sims, the reason we got the report is part of my health record. If in the future I need the medicine again, I have the record of which medicine I took. And if I have to go to another doctor or there is any issue with the medicine, it's part of my record. And I can show it to another doctor of the treatment I have received earlier. The judge says this letter says nothing about the medicine you received. It says you received antibiotics, allergies, and PPIs. Do you have any other explanation? And Mr. Sims said, no. Why wasn't that sufficient for the immigration judge to rest an adverse credibility determination on? Your honor, it is sufficient under the Real ID Act. That is an inconsistency and the agency can properly rest its adverse credibility determination on that. But in this case, the agency came up with three different specific cogent reasons. And going back to the hospital letter, not to beat a dead horse, he initially said his father got it for him. Then he said, well, we got it for our record because we just want to have records like this. But then he also said when the immigration judge pressed him on it, he said, well, like Judge Rawlinson said, he needed it for his future record if he ever went to the doctor again. And when the immigration judge pointed out, this doesn't say what medicine you received. He couldn't come up with another answer. And he said, that's the reason we got. And your honors, it was very clear based on the immigration judge's questioning that the immigration judge had deep questions about petitioner's testimony. And yet his attorney never asked him a single question on redirect trying to flesh out what his explanations were. So if we have, if there are any weaknesses in his case, he had the burden to prove that he should be eligible for the requested forms of protection. I had another question. If I'm sure. Go ahead. Go ahead, Judge Fredrickson. Um, where does it say that he got his passport because he feared for his life? Yes, your honor. So you kind of have to, well, if we go to 152. Does AR 152 say that? So yes, on 152, the immigration judge said, when did you decide to flee India? And he said that he felt that his life was in danger. Well, what does that have to do with your argument that he got his passport for that reason? My recollection is that you represented the record said that. And it does not. The record states that he gave two different reasons for why he was, why he was, well, if we go to one, the record at 138, your honor. 138? 138. Yes. And if we go to line 15, the DHS attorney is asking him, okay, now, sir, did you get the passport in preparation for leaving the country? And he said yes. But then when we go to 152, he said when he, when he made that determination, which is when he felt that his life was in danger. So, right. But there's no connection between the passport. You said there was. Your honor, I see there. I see that there is a connection on 138. He said he got the passport in preparation for leaving the country. And then on 152, he said when he made that intention, which is when he felt that his life was in danger. Okay. I'm sorry. Is there another question from the audience? Anything further you want to, is there anything you wanted to? Oh, I just wanted to say that under the totality of the circumstances, as the Supreme court told us in U.S. versus our visa, that we cannot look at. Credibility. At factors in isolation and reject them one by one. Instead, we have to look at the totality of the circumstances. And if you look at the totality of the circumstances in this case, the record does not compel the conclusion that Mr. Singh was credible. And so the government asked that the petition for review be denied. Thank you, your honors. Okay. Thank you, counsel. So a petitioner's counsel can have a minute for rebuttal. Thank you, your honors. So as to the issue of the medical letter, I was asked earlier whether the judge had specifically relied on a lack of medications in the letter. I was incorrect. I looked at that again and the judge did state that the letter purportedly didn't specifically list medications, but the letter at page 374 does list analgesic and some other things. I don't know what they stand for, PPIL or something. So I think the IJ erred in making that assumption when the letter did state what the medication were. Sure, it didn't state the dosages, but there's nothing in the record for the judge to state that that would be an insufficient description of medication taken for a doctor. What medication was listed? Let me go back to that page. So analgesic. What does that mean in terms of a medication? Name an analgesic medication. I have no idea. I'm not a doctor and neither is the judge. And so that's for the reason. That's why he was asking the question about what the medication was. Oh, I don't think he asked what the medication was. He specifically asked that on page 158 and 159 of the record. He asked, he told Mr. Singh, you just said analgesics, antibiotics, and PPIs. What? Do you have any further information? And Mr. Singh said no. Because the petitioner likewise is not a doctor and would not. No, I'm not a doctor. I know the petition said it didn't apply for me. Right. But I think it would be improper for the judge to infer what, how a medical record in India is supposed to look like and what kind of medicine a doctor is supposed to articulate in a medical letter that might be used in the future by another doctor. Perhaps it is sufficient in India to simply write antibiotics, PPIs, analgesics, and dressings as indicated in page 374. It would be improper to compare American records that may or may not be more detailed with Indian records created in a village. So that was another reason that it was improper for the IJ to speculate what the content of a medical record should be. I know we also discussed the passport issue at length. And I would just close by saying that at all times the petitioner stated that he received this passport in preparation for leaving the country. He never stated because I was harmed and then I obtained the passport in preparation for leaving. He was asked by government counsel on page 138, did you receive the passport in preparation for leaving the country? And he said, yes. And later the judge misconstrued that testimony by phrasing the question to him, didn't you get the passport because you were harmed? But he never testified to that. And as I mentioned earlier, refuted that allegation. Okay. Okay. Counsel. Thank you for your arguments. And the matter is now submitted. Thank you. Thank you.
judges: Paez, Rawlinson, Pregerson